IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN EISELE,                              No. 3:24-cv-00764-HZ

                Plaintiff,                         OPINION & ORDER

     v.

HOME DEPOT U.S.A., INC., a Delaware
corporation
                Defendant.


Jon M. Egan
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009

Jim W. Vogele
812 N.W. 17th Avenue
Portland, OR 97209

       Attorneys for Plaintiff

Christopher F. McCracken
James M. Barrett
E.A. Meg Barankin
Ogletree Deakins
222 S.W. Columbia Street
Suite 1500
Portland, OR 97201

Evan Reed Moses
Ogletree Deakins
400 South Hope Street, Suite 1200
Los Angeles, CA 90071

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

This matter is before the Court on Plaintiff Kathleen Eisele Motion to Remand, ECF 9.
For the following reasons the Court denies Eisele's Motion.

**BACKGROUND**

On August 28, 2020, Kathleen Eisele filed a class action complaint against Home Depot
U.S.A., Inc., in Multnomah County Circuit Court asserting claims for failure to pay wages when
due in violation of Oregon Revised Statute § 652.120 and failure to pay wages on termination in
violation of Oregon Revised Statute § 652.140. *Eisele I*, 3:20-cv-01740-HZ. Eisele alleged Home
Depot "rounded plaintiff's and other class members' time punches, resulting in a consistent net
underpayment to them" and "failed to pay plaintiff and the class members all earned and unpaid
wages (including vacation pay) within the statutory deadline to do so upon termination of their
employment." *Eisele I*, Compl. ¶¶ 5-6. Home Depot removed the matter to this Court pursuant to
the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A).

On July 22, 2022, the parties filed cross-motions for summary judgment as to whether
rounding is permissible under Oregon law.

On November 29, 2022, the Court issued an Opinion and Order in which it concluded
Home Depot's rounding practice was not authorized under Oregon law, that any resulting net
underpayment to hourly employees could not be excused as *de minimis*, and that Home Depot
had not willfully violated the law. *Eisele v. Home Depot*, 643 F. Supp. 3d 1175-76, 1180 (D. Or.
2022).

On January 16, 2023, Home Depot stopped its practice of rounding nationwide. On
February 23, 2023, Eisele moved for class certification in *Eisele I*. On May 5, 2023, Home Depot
"paid each of the putative class members . . . all net wages that were allegedly due as a result of

Home Depot's rounding practices." *Eisele I,* Wilson Decl., ECF 86, at ¶ 3. In addition, "[a]ll employees who were paid less on net under rounding than the time reflected in their time punches during their employment have now received payment for the alleged net underpayment plus interest." *Id.* At the May 17, 2023, hearing on Eisele's motion for class certification Home Depot, relying on its "true-up" payments, asserted that Eisele's motion for class certification was moot. Eisele acknowledged receipt of the payments, but did not concede that putative class members had been properly compensated or that the true-up payments had been properly calculated. The Court permitted Eisele time to review the data Home Depot used to make the true-up payments in order to submit further briefing on whether class certification was moot and set a status conference for August 8, 2023.

On August 8, 2023, Eisele again acknowledged receipt of payment but asserted Home Depot's "methodology of how they came up with the numbers, what they did, or how they calculated the interest, and what they did the deductions for and all of that" was incorrect, Home Depot "did it the wrong way, from our perspective." *Eisele I*, Transcript of Proceeding, ECF 104, at 7. The Court permitted Home Depot to file an amended answer to include the affirmative defense of payment, struck the pending motion for class certification, allowed Eisele 90 days to take discovery regarding the payment defense, and set a status conference for January 18, 2024.

At the January 18, 2024, conference Eisele's counsel reported he was "still trying to figure out exactly how [Home Depot] did the math to come up with the payments that they made because it doesn't match our math." *Eisele I*, Transcript of Proceeding, ECF 105, at 4. Eisele's counsel stated, however, that "[Home Depot's] number and my number are not far enough apart that I think it's going to go to trial[,]" and "[o]nce we figure out why the numbers are different, I have fairly good confidence that it will be able to settle." *Id.* at 5. The parties requested time to

allow them time to see if they could "close [their] gap." *Id*. at 7-8. The Court agreed and set a status conference for March 19, 2024.

At the March 19, 2024 status conference Eisele's counsel reported that "[t]here was a problem with the payments that [Home Depot] made . . . that's going to result in additional claims." *Eisele I*, Transcript of Proceeding, ECF 106, at 4. The parties requested another status conference in 60 days. The Court set a status conference for May 10, 2024.

On April 16, 2024, Eisele filed a class action complaint against Home Depot in Multnomah County Circuit Court (*Eisele II*) alleging that when Home Depot made the true-up payments in *Eisele I*, it improperly included prejudgment interest as wages on the putative class members' W-2 forms rather than issuing them form 1099s for the prejudgment interest. Eisele brings claims for wrongful deduction in violation of Oregon Revised Statute § 652.610; for filing a fraudulent federal information return in violation of 26 U.S.C. § 7434; and for declaratory judgment. Eisele seeks $96,777,200 in statutory damages and declaratory relief.

Home Depot removed the matter to this Court on the basis of federal-question and CAFA jurisdiction. Eisele moves to remand this matter to Multnomah County Circuit Court.

## STANDARDS

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir. 2003)("Any civil action may be removed to federal district court so long as original jurisdiction would lie in the court to which the case is removed."). A motion to remand

is the proper procedure for challenging removal. *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9ᵗʰ Cir. 2007).

The burden of establishing federal jurisdiction is on the removing party. *Hunter v. Philip Morris U.S.A.*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Generally the removal statute is strictly construed against removal jurisdiction. *Id.* When, however, a case is removed under CAFA, "no antiremoval presumption" applies because Congress "enacted CAFA to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Remand is governed by 28 U.S.C. § 1447(c) which provides, in relevant part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c).

## DISCUSSION

Eisele moves to remand this matter on the grounds that (1) she has not alleged a concrete injury, therefore, this Court lacks Article III standing and (2) the Tax Injunction Act, 28 U.S.C. § 1341, and the comity doctrine require remand.

## I.    Article III Standing

### A.    Standards

Article III "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy [and] . . . . limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "'[S]tanding is not dispensed in gross.' That is, 'plaintiffs must demonstrate standing

for each claim that they press' against each defendant, 'and for each form of relief that they

seek.'" *Murthy v. Mo.*, 144 S. Ct. 1972, 1988 (2024)(quoting *TransUnion LLC v. Ramirez*, 594

U.S. 413, 431 (2021)).

        The Supreme Court has held that the "irreducible constitutional minimum" of

standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact,

(2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted). "[T]he

party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citation

omitted). When, "as here, a case is at the pleading stage, the plaintiff must clearly . . . allege

facts demonstrating each element." *Id.* (citation omitted). Eisele challenges only the first element

in her motion to remand.

### B.    Injury in Fact

        To establish injury-in-fact, a plaintiff must show that she suffered "an invasion of

a legally protected interest" that is "concrete and particularized."[1] *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560-61 (1992). An injury is concrete if it is "'*de facto*'; that is, it must actually exist."

*Spokeo*, 578 U.S. at 340. Concrete injuries, however, are not limited to those injuries that result

in tangible harm. *See Spokeo,* 578 U.S. at 340 ("Although tangible injuries are perhaps easier to

recognize, we have confirmed in many of our previous cases that intangible injuries can

nevertheless be concrete."). Indeed, injury-in-fact is often predicated on intangible harm. *See,*

*e.g., Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24-25 (1998)(informational injury); *Lujan*, 504

U.S. at 562-63 (aesthetic injury); *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984)(stigmatic

injury). A statutory violation is not, however, necessarily synonymous with an intangible harm

---

[1] The parties do not dispute that Eisele has sufficiently alleged a particularized injury.

that constitutes injury-in-fact. *See Spokeo*, 578 U.S. at 341 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). For that reason, when a plaintiff sues to vindicate a statutory right, she still must establish that she suffered a concrete injury from the violation of that right. Generally, a plaintiff cannot merely allege a "bare procedural violation, divorced from any concrete harm" and "satisfy the injury-in-fact requirement of Article III." *Id.* In some "instances, [however,] the violation of a procedural right granted by statute can be sufficient . . . to constitute injury in fact" and "a plaintiff . . . need not allege an *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).

When determining whether an intangible harm constitutes an injury in fact, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341. The judgment of Congress is also "instructive and important" because it is "well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* Thus, "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578). "Justice Kennedy's concurrence in [*Lujan*] explained that 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580).

**C.      Standing for Eisele's Claim for Violation of 26 U.S.C. § 7434**

In her claim for violation of § 7434[2] Eisele alleges that when Home Depot made its true-up payments to class members in *Eisele I* it knowingly and improperly included prejudgment interest in the wages reported on the class members' W-2 forms. In her Motion to Remand Eisele asserts that she has pled only a bare procedural violation of § 7434 unconnected to any actual damages verses statutory damages and, therefore, this Court lacks standing on this claim. In its Response Home Depot asserts Eisele suffered a concrete injury "[a]ssuming *arguendo* that [Eisele] paid more taxes than she should have as a result of Home Depot's alleged 'overstating' her wages." Resp., ECF 13, at 20. In her Reply Eisele notes she did not plead that she overpaid taxes, "only that Home Depot deducted more in taxes than it should have. [Eisele] has not pled that Home Depot overstated her income, only that it overstated her wages." Reply, ECF 14, at 13. Eisele explains that "[p]rejudgment interest is *income*, on which [Eisele] *owed taxes.* But it is not wages, and Home Depot is only allowed to deduct taxes on wages." *Id.* (emphasis in original). Accordingly, Home Depot should have issued Eisele a 1099 form for the prejudgment interest rather than including the prejudgment interest on their W-2s. Eisele asserts that she, therefore, has not pled any actual, concrete damages and contends that every federal court to consider the issue after *Spokeo* has held that pleading only statutory damages under § 7434 is insufficient to confer Article III standing.

All of the cases that Eisele relies on, however, involve underreporting of wages on W-2s or underreporting of other employment contributions rather than circumstances like those here in which an individual's wages or other payments were overreported. *See, e.g., Queen,*

---

[2] 26 U.S.C. § 7434(a) provides: "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."

2020 WL 9350977, at *2 ("Plaintiff asserts that Defendants willfully filed false W2 information returns understating the wages earned by their employees"); *Aquino v. Mobis Ala., LLC*, No. 3:22-CV-145-TCB, 2024 WL 2764047, at *7 (N.D. Ga. May 28, 2024)("Plaintiffs allege that Allswell attempted to defraud the IRS by willfully underreporting some of the Plaintiffs' and other TN visa holders' taxable wages"); *Balle-Tun v. Zeng & Wong, Inc.*, No. 21-CV-03106-NRN, 2022 WL 1521767, at *1 (D. Colo. May 13, 2022)(the plaintiffs claimed the defendant violated § 7434 when it failed to report overtime on the plaintiff's W-2s); *Schmelzer v. Animal Wellness Ctr. of Monee, LLC*, No. 18-CV-01253, 2022 WL 3026911, at *10 (N.D. Ill. Aug. 1, 2022)("Schmelzer alleges that AWC violated 26 U.S.C § 7434, in that Edward purposefully, intentionally, and willfully directed AWC's accountant to file a false W-2 as part of Edward's coverup to prevent Schmelzer from learning that AWC used her payroll withholdings to pay company expenses and to conceal the fact that he did not effectuate any AWC IRA Plan matching contributions during the second half of 2016"). In these cases the courts concluded that "because filing fraudulent information returns underreporting an individual's income was not the harm Congress enacted § 7434 to prevent, [those plaintiffs,] relying solely on violation of [that] statute [could not] show a concrete injury in fact and lack[ed] standing to sue." *Balle-Tun v. Zeng & Wong, Inc.*, No. 21-CV-03106-NRN, 2022 WL 1521767, at *6 (D. Colo. May 13, 2022).

Those courts, however, also noted: "Cognizant that a statutory cause of action is not a replacement for concrete injury, we recognize that a plaintiff suffers a concrete injury if she shows the harm stemming from the 'defendant's statutory violation is the type of harm Congress sought to prevent when it enacted the statute.'" *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 253 (4th Cir. 2020)(quoting *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 240–41 (4th Cir. 2019)). To determine whether the harm stemming from the statutory violation of

§ 7434 is the type of harm that Congress sought to prevent, courts looked to the legislative history of § 7434. The court in *Queen* explained that § 7434 was passed in reaction "'to a specific policy problem: malcontents who sometimes file fraudulent information returns reporting large amount[s] of income for judges, law enforcement officials, and others who have incurred their wrath.'" 2020 WL 9350977, at *5 (quoting *Liverett v. Torres Advanced Enter. Sols. LLC*, 192 F. Supp. 3d 648, 654 (E.D. Va. 2016)(internal quotation marks and footnote omitted)). *See also Serving Seniors Care, Inc. v. Serratore-Rebong Grp. of Companies Corp.*, No. C 23-02333 WHA, 2023 WL 6048782, at *3 (N.D. Cal. Sept. 15, 2023)("The legislative history of Section 7434 makes clear that it was enacted to address the fact that some taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers.")(quotation omitted)). The *Queen* court and others concluded that because "Congress was aware of this issue - 'the malicious reporting of false payments' - . . . it is reasonable to conclude that § 7434 was designed specifically 'to afford a damages remedy for victims of that problem[,]' *i.e.*, the filing of false information returns *overstating* a person's income." *Id.* (emphasis in original).

The legislative history of § 7434 and the conclusion in *Queen* and other cases indicates that the statutory violation that Eisele alleges here: willfully and fraudulently overreporting of her wages, is the type of harm that Congress sought to prevent in enacting § 7434[3] and that the inconvenience and possible "significant personal loss" resulting from the IRS

---

[3] Eisele's assertion that she is not alleging that Home Depot "overstated her income, only that it overstated her wages," is not dispositive. Section 7434(a) refers to "payments purported to be made to any other person" and the legislative history reflects the concern was "the malicious reporting of false payments." There is no indication the payments about which Congress was concerned were limited to wages.

receiving fraudulent information on a plaintiff's return is a concrete injury. Under the circumstances here, therefore, the Court concludes the statutory violation alone is sufficient to establish a concrete injury-in-fact for Article III standing.

> **D.    Standing for Eisele's Claim for Violation of Or. Rev. Stat. § 652.610**

"[S]tate law can create interests that support standing in federal courts." *Magadia v. Wal-Mart Assoc., Inc.*, 999 F.3d 668, 680 n.9 (9ᵗʰ Cir. 2021)(quotation omitted). Eisele asserts, however, that she has pled only a bare procedural violation of § 652.610 for statutory damages and, therefore, she has not alleged a sufficiently concrete injury to establish standing.

Eisele alleges in her claim for violation of Or. Rev. Stat. § 652.610(3) that because Home Depot included prejudgment interest in Eisele's wages, Home Depot "overdeducted Oregon income tax and FICA from the wages due and owing to [Eisele]." Compl. ¶ 7. "Pursuant to ORS 652.610, HOME DEPOT was prohibited from deducting amounts from plaintiff's . . . wages that were not authorized by law, but HOME DEPOT willfully did so anyway."

In her Reply Eisele contends Home Depot cannot establish she has pled a concrete injury and explains:

> [F]or tax deductions, both state and federal tax law provide that plaintiff is given, instantly and unconditionally, a dollar-for-dollar tax credit for those withholdings. *Compare Slodov v. United States*, 436 U.S. 238, 243 (1978)("Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment.") and 26 U.S.C. 31, with Judge Breithaupt's seminal opinion in *Fredrickson v. Starbucks Corp*., No. 1212-15734, 2017 WL 2989244, at *20 (Or. Cir. July 07, 2017)("As in the federal system, amounts withheld are considered pre-payments of tax and a credit for the employee."), citing O.R.S. 316.187. Thus, an unlawful tax deduction does not constitute a "concrete injury," because the taxpayer already possesses a tax credit in exactly the same amount as the deduction.

> If that tax credit did not exist, the underlying overdeduction might be a concrete injury.

Reply at 10-11. Eisele's assertion that she and other putative class members receive a tax credit for the funds allegedly improperly withheld does not establish that Eisele has not suffered a concrete injury because the Ninth Circuit has held that "the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III." *Van v. LLR, Inc*., 962 F.3d 1160, 1164 (9th Cir. 2020). *See also Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("The plaintiffs have standing . . . because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal.").

In *Van* the Ninth Circuit concluded "'[t]he inability to have and use money to which a party is entitled is a concrete injury.'" 962 F.3d at 1161 (quoting *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019)). In reaching that conclusion the court cited with approval the Eleventh Circuit's decision in *MSPA*. In *MSPA* Allstate and Florida Healthcare Plus ("FHCP") both covered a car accident victim who received treatment at St. Mary's hospital. 918 F.3d at 1317. "St. Mary's billed both Allstate and FHCP for the same medical treatment," and "they both paid." *Id*. "Several months later . . . St. Mary's reimbursed FHCP for the full amount of its . . . payment - about $286." *Id*. FHCP's assignee, MSPA, subsequently sued St. Mary's parent company, Tenet Florida, Inc., over the delayed $286 reimbursement. *Id*. Tenet asserted MSPA failed to allege an injury in fact because "FHCP's only 'injury' was not getting its $286 reimbursement, and that injury disappeared when FHCP was paid in full." *Id*. at 1318. The Eleventh Circuit held "FHCP's alleged injury stems not just from its entitlement to reimbursement of the appropriate amount but also from its entitlement to receive that reimbursement *on time*. . . . The question is whether delay alone is a 'concrete' injury. It is." *Id*. (emphasis in original).

Eisele asserts that the taxes on the portion of the true-up funds that was composed of prejudgment interest should not have been withheld by Home Depot via W-2s, instead Eisele and the putative class members should have received all of the prejudgment interest and had a 1099 issued by Home Depot, after which Eisele and the putative class members would have paid the taxes on those funds with their tax returns. As a result of Home Depot's withholding of the taxes on the prejudgment interest, Eisele and the putative class members temporarily lost the use of that portion of those funds. In addition, even though, according to Eisele, she and other class members would receive a credit for the taxes withheld, "the ultimate credit does not come with interest for payment in advance of the time the credit is taken on the return. . . . [I]interest on prepayments that produce refunds runs from the time of filing, not from the time of the prepayment." *Fredrickson v. Starbucks Corp.*, No. 1212-15734, 2017 WL 2989244, at *10 n.13 (Or. Cir. July 7, 2017). Eisele and the putative class members, therefore, also lost the interest they could have made on the prejudgment interest funds had Home Depot not withheld them and instead paid them to Eisele and the putative class members and issued a 1099 for those funds. This is sufficient to establish Eisele and the putative class members suffered a concrete injury-in-fact. In summary, this Court has Article III standing.

## II.     Tax Injunction Act and Comity Doctrine

Relying on *Frederickson v. Starbucks, Corp.*, 840 F.3d 1119 (2016), Eisele asserts the TIA and the comity doctrine require remand. Home Depot asserts neither the TIA nor the comity doctrine requires remand because Eisele does not seek to enjoin any ongoing, future conduct that would prevent the collection of a state tax.

The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be

had in the courts of such State." 28 U.S.C. § 1341.[4] The TIA "constrains federal court

jurisdiction." *Smith v. Castelo*, No. 2:22-CV-00325-SAB, 2023 WL 4466446, at *2 (E.D. Wash.

July 11, 2023)(citing *Rosewell v. LaSalle Nat. Bank,* 450 U.S. 503, 512 (1981)). The TIA "bars

the entry of declaratory judgments to the same extent that it bars the issuance of injunctions."

*Fredrickson*, 840 F,3d at 1122 (citing *Cal. v. Grace Brethren Church*, 457 U.S. 393, 408–11

(1982)).

     At issue here is whether the relief Eisele seeks would "'enjoin, suspend or restrain' - that

is, stop - the collection of state taxes within the meaning of the Act." *Fredrickson*, 840 F.3d at

1122. In *Fredrickson* the plaintiffs filed a class action complaint in state court challenging the

defendant's practice of "imput[ing] 50 cents per hour in estimated tip income to each barista and

withhold[ing] state and federal taxes from the baristas' paychecks based on that amount." *Id*. at

1121. The plaintiffs contended federal tax law did not permit employers to withhold taxes in that

manner and that Oregon law did not treat the tips as wages subject to withholding of state taxes.

The plaintiffs asserted five state-law claims for violations of various Oregon wage-and-hour

statutes including Or. Rev. Stat. § 652.610(3) and sought statutory damages and declaratory and

injunctive relief "barring [the defendant] from continuing to withhold state and federal taxes

based on the imputed . . . tip income." *Id.* The defendant removed the matter to federal court

pursuant to CAFA then moved to dismiss the complaint on the grounds that the plaintiffs' claims

were preempted by the TIA or barred under Oregon law. The district court granted the

defendant's motion. The Ninth Circuit reversed holding that the plaintiffs' claims for declaratory

and injunctive relief were barred by the TIA and the Anti-Injunction Act and the comity doctrine

---

[4] The parties do not appear to assert that a plain, speedy, and efficient remedy is not available in
state court.

foreclosed the court from awarding statutory damages. The court noted that the Supreme Court explained in *Hibbs v. Winn*, 542 U.S. 88 (2004), that the TIA "serves 'state-revenue-protective objectives' and accordingly applies only if the requested relief would 'reduce the flow of state tax revenue.'" *Id.* at 1123. In *Hibbs* the Court concluded that the TIA did not "bar a challenge to state tax *credits* because granting the relief the plaintiffs sought (invalidation of the credits) would actually have increased, not reduced, the flow of state tax revenue." *Id.* (citing *Hibbs,* 542 U.S. at 96)(emphasis in *Fredrickson*). The court in *Fredrickson* stated that unlike *Hibbs,* if it granted the relief sought by the plaintiffs, the defendant "would no longer collect the state taxes in question and would no longer remit those funds to Oregon's treasury." *Id*. The court also concluded it lacked jurisdiction to issue declaratory or injunctive relief as to the defendant's withholding of federal taxes due to the Anti-Injunction Act, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person," subject to several exceptions that do not apply here. 26 U.S.C. § 7421(a). The court found that its analysis of the bar imposed by the TIA as to the state-tax component of the plaintiffs' claims "appli[ed] equally under the Anti-Injunction Act to the federal-tax component of their claims." *Fredrickson*, 840 F.3d at 1124. Finally, the court noted the Supreme Court has not yet decided whether the TIA bars claims for statutory damages, but concluded it did not need to reach that issue because it concluded that the "federal-state comity doctrine" precluded an award of statutory damages. The court explained that the comity doctrine "establishes an even '[m]ore embracive' prudential rule that federal courts should refrain from hearing 'claims for relief that risk disrupting state tax administration.'" *Id.* (quoting *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417 (2010)). "The comity doctrine extends to claims seeking damages based on the same federalism concerns animating the [TIA's] limits on declaratory and injunctive relief." *Id.*

(citations omitted). The court noted "[t]o award statutory damages, the district court would first have to declare that Oregon law prohibits [the defendant's] practice of withholding state taxes on the basis of imputed tip income, and [the defendant] would of course cease doing so in order to avoid future liability." *Id.* (citation omitted). "The impermissible end result, as with declaratory or injunctive relief, would be to stop the flow of tax revenue into Oregon's coffers." *Id.* As a result, the comity doctrine also precluded the plaintiffs' claims for statutory damages.

In *Fredrickson* the plaintiffs sought to enjoin the defendant's ongoing practice of withholding federal and state taxes from imputed tip income, whereas here Eisele challenges a one-time true-up payment and does not seek prospective relief. The taxes have already been withheld and paid to the state and federal coffers. Home Depot asserts, therefore, that there is no ongoing practice and any ruling by this Court would not stop the flow of tax revenue into Oregon's coffers. The Court agrees. The TIA by its plain language is concerned with prospective relief. *See Solano v. Kroger Co.*, No. 3:18-CV-01488-AC, 2020 WL 7028473, at *2 (D. Or. Nov. 30, 2020)(Mosman J.)("By its plain language, the TIA's focus is on prospective relief: enjoining, suspending, or restraining the assessment, levy, or collection of any tax under State law."). The cases that Eisele relies on involve efforts to enjoin or restrict tax collections going forward. Eisele does not cite a case in which a court concluded the TIA barred an action challenging withholding on a one-time payment that was not part of an ongoing practice. In addition, as noted, the taxes have already been paid.

Similarly, the comity doctrine does not prohibit Eisele's claim for statutory damages because even if this Court determines that the prejudgment interest was improperly included in Eisele's wages for withholding purposes this would not cause Home Depot to cease any ongoing practice in order to avoid future liability. Eisele does not allege in her Complaint that Home

Depot has an ongoing practice of including prejudgment interest in wages when making true-up payments in class action settlements and Home Depot represents in its Response that "there is no such ongoing practice."

The Court, therefore, concludes that neither the TIA nor the federal-state comity doctrine preclude Eisele's claims.

**CONCLUSION**

The Court DENIES Eisele's Motion to Remand, ECF 9.

IT IS SO ORDERED.

DATED:_____ September 12, 2024

MARCO A. HERNÁNDEZ
United States District Judge